## SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW YORK,

IN OCTOBER TERM, 1834, IN THE FIFTY-NINTH YEAR OF OUR INDEPENDENCE.

---

Continued from the last volume.

---

## PURPLE *vs.* HORTON.

It is no cause of *challenge* to a *juror* that he is a *freemason*, where one of
the parties to a suit at law is a *freemason* and the other not.

The *oath* taken by a *master mason* or a *royal arch mason* on his admission
does not disqualify him from serving as a juror, in an action between
a *mason* and a person not a *mason*.

In the obligation assumed by a *royal arch mason*, and said to be in these
words: "I promise and swear that I will aid and assist a companion
royal arch mason when engaged in any difficulty, and espouse his
cause as far as to extricate him from the same, if in my power, *whether
he be right or wrong :*" there is a discrepancy in the relation given of it
by masons; whilst some say that such is the form of the oath, others
deny it; but all concur in stating that the obligation is always accom-
panied with an *explanation* as to its meaning, which is, that if a royal
arch mason sees a brother mason engaged in a quarrel with another per-
son, it is his duty to take his brother mason by the arm and extricate
him, without inquiring into the merits of the controversy.

In an action of *slander*, it is no cause of nonsuit that *all* the actionable
words laid in the declaration are not proved; it is enough that some
be proved.

It is not competent to a defendant, in *mitigation* of damages in an action
of *slander*, to give evidence of facts and circumstances which induced
him to suppose the charges true at the time they were made, if such

Vol. XIII.　　　　　　2

facts and circumstances tend to prove the charges or form a link in the chain of evidence to establish a justification ; and he is not allowed to give such evidence, although he expressly disavows a justification, and fully admits the falsity of the charges.

THIS was an action of *slander*, tried at the Chenango circuit, in May, 1832, before the Hon. ROBERT MONELL, one of the circuit judges.

The plaintiff is a *physician*, and the words charged to have been spoken by the defendant are alleged to have been spoken of and concerning him, and of and concerning his character as a physician. The words were, that he had introduced the disease of the *smallpox* into the town of *Coventry*, the town in which he resided, for the purpose of increasing his business, and had *killed the brother of the defendant* by intentionally exposing him to the poisonous infection of that decease. The declaration consists of two counts ; the above charges are laid in a variety of modes of expression, and the counts also contain various other charges, all bearing upon the above general accusations. In some of the charges the defendant is represented as having spoken of the plaintiff as *a mason*, and as *a royal arch mason*. The defendant pleaded the *general issue* only. On the trial the speaking of the words as to the introduction by the plaintiff of the *smallpox* into the town, were proved ; but there was a failure to prove that the defendant had charged the plaintiff with killing the brother of the defendant. A motion was made for a nonsuit on the ground of variance between the declaration and proof : the defendant insisting that the plaintiff having failed to prove the charge relating to the killing of the defendant's brother, was not entitled to recover. The judge refused to nonsuit the plaintiff. The defendant then admitting the falsity of the charges made by him, with a view to repel the presumption of malice and to mitigate damages, offered to prove certain facts and circumstances which induced him to suppose the charges true at the time they were made, although they had since turned out to be false, alleging that he had uttered them under a mistake. These facts and circumstances were, 1. That previous to the speaking of the words, it had been communicated to the defendant that the plaintiff had brought from the town of *Bainbridge* a phial

of smallpox matter, taken from the body of a victim of the smallpox; and that the former partner in business of the plaintiff, had said, that had it not been for that phial, there would have been no smallpox in *coventry*, the town into which it was alleged the defendant had introduced the disease; 2. That about twelve days before Ransom Horton (the brother of the defendant) broke out with the smallpox, the plaintiff was attending religious exercises in a church, and sat at the side of Ransom Horton; that during the service he flourished about his handkerchief, and when the congregation rose to retire, shook hands with Ransom Horton, pretending to be acquainted with him, when in fact he was not, and that he supposed that the person he accosted was the defendant, although at that time he and the defendant were not on friendly terms; 3. That when the plaintiff first called to visit Ransom Horton while sick, he pretended to understand fully the disease, and professed ability to manage it; called it an inflamation of the bowels, or an eruption from a lame leg with which Ransom Horton had been afflicted, or some other disease, but not the smallpox; and that he did not discover or pronounce it that disease, until it was concluded to send for another physician, subsequent to whose attendance he pronounced the disease to be the smallpox, and admitted his mistake and previous ignorance of the character of the disease; and the defendant offered further to prove, that if such other physician, or any other poysician who knew the disease, had attended Ransom Horton when the plaintiff was called in and attended him, he would, with common skill and attention on the part of the physician, most probably have recovered, and now have been living; 4. That the plaintiff with a lancet took matter from the smallpox of Ransom Horton, after it was known that he had the smallpox, for the purpose of inoculation, and inoculated the defendant in one arm with the same, and then with the same lancet stirred the matter for the kine pock in a box or vessel belonging to him, which contained kine pock matter, and inoculated the the defendant in the other arm for the kine pock; that the plaintiff also, in the presence of the defendant, inoculated the family of Ralph Johnson for the *kine pock*, with the matter which had been so stirred with the lan-

cet, and the family of Ralph Johnson had the *smallpox ;* and
that the plaintiff also, in like manner, inoculated the daughter
of the defendant, and she also had the *smallpox* therefrom;
and 5. That the plaintiff also inoculated Noyes P. Burd for
the *kine pock,* with matter from the box or vessel stirred with
the lancet used to obtain smallpox matter from Ransom Hor-
ton; that Burd had the *smallpox,* and two physicians (nam-
ing them) took matter from Burd's arm, supposing he had the
kine pock, and inoculated for the kine pock three persons,
(naming them,) all of whom had the smallpox—all which
evidence was objected to on the part of the plaintiff and re-
jected by the judge. The defendant proved that for years
previous to December, 1830, when Ransom Horton died,
there had been no cases of smallpox in the town of *Coventry,*
where Ransom Horton resided when taken ill, and that Ran-
som Horton had not been from home for months previous to
his becoming diseased; that in 1829 the smallpox had pre-
vailed in *Bainbridge,* and in the spring of 1830 in *Green,* both
which towns adjoined *Coventry.* The jury found a verdict
for the plaintiff, with $300 damages,

On the trial of this cause there were three *challenges to ju-
rors,* which present the most interesting questions in this case.
In the empannelling of the jury, one *Henry Burlingame* was
drawn and called as a juror, whereupon the defendant challeng-
ed him for principal cause, and insisted that he did not stand
indifferent, &c. between the parties. The challenge was in
writing, in the words and figures following, to wit: "And
now, at this day, to wit, on, &c. at, &c. before, &c. comes as
well the said plaintiff as the said defendant, by their respec-
tive attornies, and the jurors of the jury empannelled also
come, and hereupon the jurors being called, and *Henry Bur-
lingame* appearing as one of them, the said P. Horton (the
defendant) forthwith challenges him as a principal challenge,
for the following causes:

1. That the said Henry Burlingame is of the order, frater-
nity or society called freemasons, and has taken what is call-
ed in the order of masons the royal arch degree.

2. That the said Henry Burlingame has taken the usual
oath or obligation administered to candidates, or those who

take the royal arch degree in freemasonry, in the words and figures, or to the purport following: I, Henry Burlingame, of my own free will and accord, in the presence of Almighty God and this chapter of royal arch masons, erected to God and dedicated to the holy order of St. John, do hereby and hereon most solemnly and sincerely promise and swear, in addition to my former obligations, that I will not give the degree of royal arch mason to any one of an inferior degree, nor to any other being in the known world, except it be to a true and lawful companion royal arch mason, or within the body of a just and legally constituted chapter of such, and not unto him or unto them whom I shall hear so to be, but unto him or them whom I shall find so to be after strict trial, due examination, or legal information received. Furthermore do I promise and swear, that I will not give the grand omnific royal arch word which I shall hereafter receive, neither in the chapter nor out of it, except there be present two companion royal arch masons, who with myself make three, and there be three times three under a living arch not above my breath. Furthermore, that I will not reveal the ineffable characters belonging to this degree, or retain the key to them in my possession, but destroy it whenever it comes to my sight. Furthermore do I promise and swear, that I will not wrong this chapter, nor a companion of this degree, to the value of any thing knowingly myself, or suffer it to be done by others, if in my power to prevent it. Furthermore do I promise and swear, that I will not be at the exaltation of a candidate to this degree at a clandestine chapter, I knowing it to be such. Furthermore do I promise and swear, that I will not assist or be present at the exaltation of a candidate to this degree who has not regularly received the degrees of entered apprentice, fellow craft, master mason, mark master, past master, most excellent master, to the best of my knowledge and belief. Furthermore, that I will not assist or see more or less than three candidates exalted at one and the same time. Furthermore, that I wil lnot assist or be present at the forming or opening of a royal arch chapter, unless there be present nine regular royal arch masons. Furthermore do I promise and swear, that I will not speak evil of a companion

ALBANY,
Oct. 1834.

Purple
v.
Horton.

ALBANY,
Oct. 1834.

Purple
v.
Horton.

royal arch mason, neither behind his back nor before his face, but will apprise him of approaching danger, if in my power. Furthermore do I promise and swear, that I will not strike a companion royal arch mason in anger, so as to draw his blood. Furthermore do I promise and swear, that I will support the constitution of the general grand royal arch chapter of the United States of America—also the constitution of the grand royal arch chapter of the state under which this chapter is held, and conform to all the by-laws, rules and regulations of this or any other chapter of which I may hereafter become a member. Furthermore do I promise and swear, that I will obey all regular signs, summons or tokens, given, handed, sent or thrown to me from the hand of a companion royal arch mason, or from the body of a just and lawfully constituted chapter of such, provided it be within the length of my cable-tow. Furthermore do I promise and swear, that I *will aid and assist a companion royal arch mason when engaged in any difficulty, and espouse his cause so far as to extricate him from the same, if in my power, whether he be right or wrong;* also that I will promote a companion royal arch mason's political preferment in preference to another of equal qualifications. Furthermore do I promise and swear, that a companion royal arch mason's secrets, given me in charge as such and I knowing them as such, shall remain as secure and inviolable in my breast as in his own, *murder and treason not excepted.* Furthermore do I promise and swear, that I will be aiding and assisting all poor and indigent royal arch masons, their widows and orphans, wherever dispersed around the globe, so far as in my power without material injury to myself or family. All which I most solemnly and sincerely promise and swear, with a firm and steadfast resolution to perform the same, without any equivocation, mental reservation, or self evasion of mind in me whatever, binding myself under no less penalty than that of having my skull smote off, and my brains exposed to the scorching rays of the sun, should I ever knowingly or wilfully violate or transgress any part of this my solemn oath or obligation of a royal arch mason. So help me God, and keep me steadfast in the performance of the same.

3. That the *plaintiff* is a royal arch mason; that he has taken that degree and the usual oath belonging to that degree in masonry, above set forth.

4. That the *defendant* was once a member of, or belonged to the society or fraternity of freemasons, but about three years ago renounced and seceded from the order of masons, and published his renunciation.

5. That the plaintiff, amongst other charges, complains, as appears by the record in this cause, of certain words or charges implicating or reflecting on the plaintiff as a mason of the royal arch degree, and uttered by the defendant; that the masons of Coventry and Bainbridge, or some of them, have made common cause with the plaintiff, and some of them have said that he would have nothing to pay in this prosecution; that he would be pursued, and that masonry would follow the defendant to the grave; which said charges the said defendant is ready to aver, maintain and prove, when and where this court shall direct: which challenge was forthwith traversed and denied by the plaintiff, and the issue upon the challenge and denial aforesaid the judge ordered to be immediately tried and determined by triors, in the usual form; whereupon the two first jurors who had been called, and appeared and were found competent jurors, were thereupon duly sworn as triors, to well and truly try whether Henry Burlingame stood indifferent between the parties to the issue aforesaid. The counsel for the defendant thereupon proceeded to submit to the triors the evidence in support of the challenge. Henry Burlimgame, the juror challenged, being sworn, testified that he belonged to the order of masonry, and had been advanced to the royal arch degree. The oath as formed in Bernard's book is some part of it correct; some of it he never took. He received his degree at New-Berlin, and took the following oath: " Furthermore do I promise and swear, that I will aid and assist a companion royal arch mason when engaged in any quarrel, so far as to extricate him from the same, whether right or wrong." This oath was *explained* as follows: If he saw a brother engaged in any difficulty or quarrel with any one else, it was his duty to separate them, if possible, without inquiring whether the quarrel was right

or wrong on his part. The oath of a royal arch mason, as published in the *Anti-masonic Almanac* for 1831, is not the same the witness took; he never took the following oath, or any similar one : " That I will promote a companion royal arch mason's political preferment in preference to another of equal qualifications." The witness said he never considered the obligation as binding him to keep secret a dishonorable action. The oath to keep a royal arch mason's secrets, when delivered in charge as such,*murder and treason not excepted*, was taken by him, with the addition of the word*worthy*. The witness never was in any manner prejudiced as a juror by his masonic obligations, and believes himself perfectly indifferent between the parties, and without any bias in favor of either.

*Doct. Levi Farr*, of Green, testified that he is a royal arch mason ; part of the oath in Bernard's book is right, and a part wrong. The oath to assist a brother when engaged in a quarrel, so far as to extricate him, *whether right or wrong*, is substantially correct. The explanation is invariably given, after the oath, that if they saw a brother in a quarrel, to take him by the right arm and extricate him without inquiring the cause. Never heard the oath to promote a brother's political preferment. Has taken the oath to keep a worthy companion royal arch mason's secrets, when given in charge as such, *murder and treason not excepted*. Should not consider himself bound to keep any other than ordinary secrets of a worthy brother. Never felt any masonic predilections, when on a jury or sitting as a magistrate. Is taught many moral lessons in the lodge room, to obey the laws of his country and his God, and to be a good citizen. There is nothing in masonry to conflict with these duties. Before taking the degree of entered apprentice, the candidate is informed that his obligations will not militate with his duty to his country and to society—and witness always found this to be true.

*Levi Parker* testified that he is a royal arch mason. The oath as laid down by Bernard is substantially correct, with the addition of the word *worthy* in the oath to keep a companion's secrets. The oath to promote a brother's political preferment is not taken. *Never heard the words murder and treason not excepted* in the oath. Previous to entering, a can-

didate is always informed that his obligations will not mili-
tate against his duties to his country, his conscience or his
God. Should not consider himself bound to keep any crimi-
nal secret. Never was influenced as a juror by his masonic
obligations. The counsel for the defendant then rested, and
the plaintiff's counsel then called

*Perez Randall,* who testified that he was a royal arch ma-
son, and has been for twelve or fifteen years. Took his de-
gree in Norwich. Took this obligation : "I will espouse the
cause of a worthy companion royal arch mason, when I see
him engaged in difficulty, so as to extricate him from the
same, *whether he be right or wrong.* The explanation was as
the other witness had stated—that if he saw a *worthy* broth-
er engaged in a quarrel with any other person, he was
to take him by the arm and lead him away, without inquir-
ing into the merits of the controversy between them. It is
generally found necessary to make the explanation; as the
candidate *always stops when he gets to that section of the obli-
gation.* Never heard or took the oath to promote a brother's
political preferment, in preference to another of equal qualifi-
cations. Has heard the royal arch mason's oath administer-
ed often in the grand chapter; but never heard any political
oath. Took the following: "I will keep a worthy brother's se-
crets without exception,"—*murder and treason not excepted is
not in the oath.* Knows of nothing criminal in the obligations
of masonry ; never was prejudiced by them as a witness or a
juror. Candidates are told, before entering the lodge, that
there is nothing in masonry to militate against their religion
or politics. Never heard any political discussions in the lodge
room. The penalty of the oath is never feared. A man who
should reveal the secrets of masonry would be considered as
having violated his oath; but not as having forfeited his life ;
expulsion is the highest punishment known.

*John F. Hubbard* testified that he is a royal arch mason.
Took the following obligation : "I furthermore promise and
swear, that if I see a worthy companion royal arch mason en-
gaged in difficulty, I will assist him so far as to extricate him
from the same." The explanation always follows the oath,

ALBANY,
Oct. 1834.

Purple
v.
Horton.

is considered a part of it, and is the same the other witnesses have stated. Never took the oath to promote a brother's political preferment, and never heard it taken. The words *murder and treason not excepted* are not in the oath, and never have been to his knowledge. The words are, *without exception.* Is certain the words *right or wrong* are not in the oath, as given in the grand chapter. Considers the explanation as a part of the oath, and as determining its meaning. Knows of no power in the grand chapter to alter the obligation. The oath may sometimes be given with the words right or wrong added; but if so, it is an interpolation. The bible is presented to every mason as the rule of his faith and practice. The charges and lectures point out the moral duties of masons, and are always considered as binding.

*Hezekiah Read* testified that he is a royal arch mason. The oath as taken by him in Connecticut is this: "I will keep the secrets of a worthy companion royal arch mason as I would my own." Never heard or took the oath to promote a brother's political preferment. There is nothing in masonry contrary to the moral duties.

*Levi Bigelow* testified that he is a royal arch mason. Never heard the political oath. The words *murder and treason not excepted are not in the oath.* There is nothing immoral in masonry. Never heard political or sectarian subjects discussed in the lodge. Never was influenced in his politics or a juror by his masonic obligations.

*Richard W. Juliand* testified that he has been a royal arch mason for ten years. Concurs substantially with the last witness.

*Gen. O. G. Rundell* testified that he has never taken a masonic obligation which should induce him to swerve in any manner from morality.

*Silas Holmes* testified that he has been a royal arch mason for fifteen years. Masonry has never influenced him to do any thing wrong. The triors having retired under the charge of the court, returned and declared that they found Henry Burlingame indifferent between the parties, and a competent juror; and he was accordingly sworn, and took his seat as a juror.

Previous to the challenge of Burlingame, a juror of the name of *William Griswold*, on being called and appearing, was challenged by the defendant in like manner for principal cause as not being indifferent. This challenge was also in writing, and specified the following causes: 1. That Griswold is of the order, fraternity or society called *freemasons*, and has taken what is called in the order of mason the *master mason degree ;* 2. That he has taken the usual oath or obligation administered to candidates, or to those who take the master mason degree in freemasonry, in the words and figures, or to the purport following: " I, William Griswold, of my own free will and accord, in presence of Almighty God and this worshipful Lodge of master masons, erected to God, and dedicated to the holy order of St. John, do hereby and hereon most solemnly and sincerely promise and swear, in addition to my former obligations, that I will not give the degree of a master mason to any one of an inferior degree, nor to any other being in the known world, except it be to a true and lawful brother, or brethren master mason, to or within the body of a just and lawfully constituted lodge of such, and not unto him or unto them whom I shall so to be, but unto him and them only whom I shall find so to be, after strict trial and due examination, or lawful information received. Furthermore do I promise and swear, that I will not give the master's word, which I shall hereafter receive, within the lodge nor out of it, except it be on the five points of fellowship, and then not above my breath. Furthermore do I promise and swear, that I will not give the grand hailing sign of distress, except I am in real distress, or for the benefit of the craft when at work; and should I ever see that sign given, or the word accompanying it, and the person who gave it appearing to be in distress, I will fly to his relief at the risk of my life, should there be a greater probability of saving his life than losing my own. Furthermore do I promise and swear, that I will not wrong this lodge, nor a brother of this degree, to the value of one cent, knowingly, myself, nor suffer it to be done by others, if in my power to prevent it. Furthermore do I promise and swear, that I will not be at the initiating, passing and risking a candidate at one communication, without a regular dispensation

ALBANY,
Oct. 1834.

Purple
v.
Horton.

ALBANY,  for the grand lodge of the same.   Furthermore do I promise
Oct. 1834. and swear, that I will not be at the initiating, passing or rais-
Purple    ing a candidate in a clandestine lodge, I knowing it to be
v         such.   Furthermore do I promise and swear, that I will not
Horton.   be at the initiating of an old man in dotage, a young man in
nonage, an atheist, irreligious, libertine, idiot, madman, her-
maphrodite, nor woman.   Furthermore do I promise and
swear, that I will not speak evil of a brother master mason,
neither behind his back, nor before his face, but will apprise
him of all approaching danger, if in my power.   Further-
more do I promise and swear, that I will not violate the chas-
tity of a master mason's wife, mother, sister or daughter, I
knowing them to be such, nor suffer it to be done by others,
if in my power to prevent it.   Furthermore do I promise and
swear, that I will support the constitution of the grand lodge
of the state of New York, under which this lodge is held, and
conform to all the by-laws, rules and regulations of this or any
other lodge of which I may at any time hereafter become a
member.   Furthermore do I promise and swear, that I will
obey all regular signs, summons or tokens, given, handed, sent
or thrown to me from the hand of a brother master mason, or
from the body of a just and lawfully constituted lodge of such,
provided it be within the length of my cable-tow.   Further-
more do I promise and swear, that a master mason's secrets,
given to me in charge as such, and I knowing them to be such,
shall remain as secure and inviolate in my breast as in his
own, when communicated to me, *murder and treason except-
ed*, and they left to my own election.   Furthermore do I prom-
ise and swear, that I will go on a master mason's errand when-
ever required, even should I have to go barefoot and barehead-
ed, if within the length of my cable-tow. Furthermore do I
promise and swear, that I will always remember a brother
master mason, when on my knees, offering up my devotions
to Almighty God.   Furthermore do I promise and swear,
that I will be aiding and assisting all poor indigent master
masons, their wives and orphans, wheresoever dispersed around
the globe, as far as in my power, without injuring myself or
family materially.   Furthermore do I promise and swear, that
if any part of this my solemn oath or obligations be omitted at

this time, that I will hold myself amenable thereto, whenever informed. To all which I do most solemnly and sincerely promise and swear, with a fixed and steady purpose of mind in me, to keep and perform the same, binding myself under no less penalty than to have my body severed in two in the midst, and divided to the north and the south; my bowels burnt to ashes in the centre, and the ashes scattered before the four winds of heaven, that there might not be the least track or trace of remembrance remaining among men or masons of so vile and perjured a wretch as I should be, were I ever to prove wilfully guilty of violating any part of this my solemn oath or obligation of a master mason; so help me God, and keep me steadfast in the due performance of the same. 3. That the *plaintiff* is a royal arch mason; that he has taken that degree and the usual oath belonging to that degree in masonry, in the words, or to the effect following; (setting forth the *oath of a royal arch mason* as herein before specified.) 4. That the *defendant* was once a member of, or belonged to the society or fraternity of *freemasons*, but about three years ago *renounced* and seceded from the order of masons, and published his renunciation. 5. That the plaintiff, amongst other charges, complains, as appears by the record in this cause, of certain words or charges, implicating or reflecting on the plaintiff as a mason of the royal arch degree, and uttered by the defendant; that the masons of Coventry and Bainbridge, or some of them, have made common cause with the plaintiff, and some of them have said that he would have nothing to pay at this prosecution; that he would be pursued, and that masonry would follow the defendant to the grave; which said charges the defendant is ready to aver, maintain and prove, when and where this court shall direct. Which challenge was forthwith *demurred* to by the plaintiff, and argued and decided by the court, the judge expressing his opinion that *Griswold*, as a juror, stood indifferent between the parties; whereupon he was sworn, and took his place among the other jurors, and heard the evidence, &c. To which decision the defendant excepted. There was a like challenge to another juror, of the name of *Lull*, for the same cause, which was determined

ALBANY,
Oct. 1834.

Purple
v.
Horton.

Purple
v.
Horton.

in like manner, and to which decision also the defendant excepted.

The defendant moved for a new trial on a case made, the motion being submitted on written arguments.

*J. Clapp*, for defendant.

*Buttolph & Thorp*, for plaintiff.

*By the Court*, SAVAGE, Ch. J. The defendant moves for a new trial on the following grounds : 1. That improper persons were admitted to serve as jurors ; 2. That there was a variance between the declaration and proof ; 3. That proper evidence offered by the defendant was rejected by the judge ; and 4. That the verdict is against law and evidence.

The objection to *Griswold* and *Lull*, as jurors, is the same, and it takes the broad ground that a *master mason* is incompetent to sit as a juror in a cause wherein one of the parties belongs to the *fraternity of freemasons*. The authority of *Blackstone* is quoted to prove that the juror being of the same society or corporation is enough to exclude him. Mr. Justice Blackstone cites no authority for the dictum, but I have elsewhere seen *Finch's law* cited as authority for the whole paragraph ; and the reason assigned for excluding as jurors all persons within the 9th degree, all who have been arbitrators in the same matter, or a juror in the same cause, &c. is because the cause of challenge assigned carries with it *prima facie* evident marks of suspicion, either of malice or favor. Is it true that persons belonging to the same society or corporation are *ipso facto* prejudiced in favor of every person belonging to the same society or corporation, so that they cannot decide a question of fact impartiality between them and other persons ? Whatever may have been the state of society in the days of *Finch* and of *Blackstone*, it is not so now. This rule would exclude every stockholder in the same bank, every member of the same church, and every associate of the same benevolent society. We have many societies in which the members are extremely numerous, who have never heard of each other, and can have no inducements to favor persons who may belong to the same

ALBANY,
Oct. 1834.

Purple
v.
Horton.

society, in preference to other individuals. The society of freemasons is supposed to be as numerous as any—the members spreading over Europe and America, embracing many thousands. Are all these persons so biassed in favor of the members of that society, that they cannot find the fact truly from evidence to be produced before them, whether in an action of *slander* the defendant spoke the words charged in the declaration? I will not say that there may not be cases where this rule is properly applicable, but there surely is no reason for its application in this case. Nor do I see any thing in the *oath of a master mason*, as set forth in the challenge, which should create a disqualification. The defendant's counsel has referred to those parts of the obligation, in which the master mason swears that he will apprise a brother of all approaching danger, if in his power—and the clause in which he swears that he will be aiding and assisting all poor indigent master masons, their wives and orphans, wheresoever dispersed around the globe, &c. These clauses enjoin the duties of benevolence and charity, but surely contain no evidence of bias or partiality in favor of brethren, or prejudice against others in matters in litigation. These challenges to Griswold and Lull having been *demurred* to, were decided by the court.

The challenge against *Burlingame* was submitted to triors and the question of impartiality decided by them as a matter of fact; if they have decided against evidence, a new trial is the only way in which that error can be corrected. The evidence before them consisted of the oath taken by royal arch masons, and the testimony of several witnesses as to the construction given by the fraternity to the questionable clause, which is, " that he will aid and assist a companion royal arch mason, when engaged in any difficulty, and espouse his cause so far as to extricate him from the same, if in his power, whether he be right or wrong." The juror challenged was examined as a witness, and testified that the oath he took was thus: "I will aid and assist a companion royal arch mason, when engaged in any quarrel, so far as to extricate him from the same, whether right or wrong." He stated that the oath was explained as follows: If he saw a brother engaged in any difficulty or quarrel with any one else, it was his duty to sepa-

rate them, if possible, without inquiring whether the quarrel was right or wrong on his part. This witness gave other explanations to other parts of the obligation set forth in the challenge; and as to yet other parts, denied that they belonged to it at all; but they are not material here. He said that he never was in any manner prejudiced as a juror by his masonic obligations. Levi Farr gave a similar explanation to the oath: If a royal arch mason saw a brother in a quarrel, it was his duty to take him by the right arm and extricate him, without inquiring the cause. Perez Randall, John F Hubbard, Hezekiah Read, Levi Bigelow, Richard W. Juliand, O. G. Randall and Silas Holmes all concurred in the understanding of masons of the clause in the oath above set forth, and in the declaration, that there is nothing in masonic obligations contrary to moral duties. The bible is presented to them as the rule of their faith and practice, and the lectures point out the moral duties, and are considered binding. Mr. Hubbard stated that the words *right or wrong* were an *interpolation*, and did not belong to the obligation as given in the grand chapter. Upon this testimony the triors could not find the juror disqualified.

It is next objected that the plaintiff should have been nonsuited for a variance between the declaration and proof: not that some of the actionable words were not proved substantially as laid, but that *all* the words laid were not proved. The plaintiff complains, in the same count, that the defendant has charged him with having introduced the smallpox, with a view to his own emolument, and also with destroying the life of his brother Ransom Horton. The plaintiff has proved the first charge, but not the second; and the defendant insists the plaintiff shall be nonsuited. It is a sufficient answer to say that the plaintiff proved enough to sustain his action. It is not necessary to prove all the words laid.

The principal ground for this motion seems to be, the refusal of the judge to receive the evidence offered in *mitigation*. The counsel prefaced each of these offers with an entire disavowal of an intended justification, and a full admission of the falsity of the charge, and offered in mitigation facts and cir-

cumstances which induced the defendant to believe the charges true when made.

The charges proved to have been made against the plaintiff by the defendant are, 1. The plaintiff introduced the small-pox into the town of Coventry for his own emolument; 2. That he gave the disease to Johnson's family and others intentionally, pretending to inoculate them for the kine-pock; and 3. That he gave it to the defendant's brother, intending to give it to the defendant. On the trial, the defendant admits these charges are entirely false and groundless, and proposes to mitigate damages by showing facts and circumstances *which induced him to suppose the charges true at the time they were made.* If these facts and circumstances were sufficient to induce the defendant to suppose the charges true, are they not also sufficient to induce the jury to believe them true? That they tend to a justification, the defendant's counsel does not deny. Neither can it be denied that the defendant seeks to secure himself from damages; not by showing that he spoke the slanders innocently, but by endeavoring to raise in the minds of the jury suspicions of the plaintiff's guilt, when he dare not put a justification upon the record, and when, for the purpose of his covert justification, he admits the charges false. His counsel argues the point in his favor as earnestly as if it had not been frequently decided. The doctrine of this court on this subject is familiar to every lawyer. Facts and circumstances may be shewn in mitigation when they disprove malice, and do not tend to prove the charges, or form a link in the chain of evidence to prove a justification. The defendant's counsel attacks this position, endeavors to show that this court was in entire error when this position was asserted in *Root* v. *King*, 7 *Cowen's R.* 613, and undertakes to prove it by the English cases which were there overruled. He insists also that this point was overruled by the court of errors in the same cause, though they affirmed the judgment; and finally that this court have themselves abandoned the doctrine, in the case of *Gilman v. Lowell*, 8 *Wendell*, 573. In all this, to say the least, the counsel is under a great mistake. Instead of discussing the question

again, I refer to my opinion in the case last cited. It may not be amiss here to suggest to counsel, that when dissatisfied with the decisions of this court, the proper course is to raise the points at the trial and take *exceptions*, and then carry the questions to the court of errors, instead of arguing the same points over again in this court upon a *case*. It is insisted that the course attempted in this case shows the absence of malice. That I deny. It must be admitted that the speaking the words is evidence of malice. A justification does not disprove malice, but confirms it. In such case the plaintiff fails ; not because of the absence of malice in the defendant, but because the plaintiff has sustained no damage. Notice of justification put upon the record evidence conclusive of malice. If a notice that a defendant intends to prove the truth is evidence of malice, the offer of evidence tending towards proof cannot show the absence of malice.

The last ground upon which the defendant asks for a new trial is, that the verdict is against law and evidence. From the remarks already made, it is clear that the verdict is according to law as it is understood in this state, and it is well supported by the evidence. A new trial is therefore denied.